NO. 07-01-0022-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 25, 2002

_____


THE TRAVELERS INDEMNITY COMPANY, APPELLANT

V.

PAGE & ASSOCIATES CONSTRUCTION CO., FORMERLY
PAGE & WIRTZ CONSTRUCTION CO., A NEW MEXICO
CORPORATION; AND J.C. PAGE AND ALICE L. PAGE,
INDIVIDUALLY, APPELLEES


_____


FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 77,458-D; HONORABLE DON EMERSON, JUDGE

_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

This is an appeal from a bench trial judgment in favor of appellees Page &

Associates Construction Company (Page) and J.C. and Alice Page (the Pages) against

The Travelers Indemnity Company (Travelers) in which the trial court found that Travelers

engaged in conduct that violated the Texas Deceptive Trade Practices Act (the DTPA) and

the Texas Insurance Code. The trial court entered judgment on appellees' extra-contractual claims in the total amount of $3,700,790.30 for actual and statutory damages, exemplary damages, pre-judgment interest, and attorneys' fees. We reverse the judgment of the trial court and render judgment for Travelers.

The extra-contractual claims giving rise to the judgment before us were originally a part of a lawsuit brought by Page against Travelers arising out of a dispute about insurance coverage. In that suit, and on an agreed motion, the trial court severed the extra-contractual claims and granted appellees a partial summary judgment on the coverage claims. The partial summary judgment on the coverage questions was appealed to this court. In disposing of that appeal, we affirmed the trial court judgment in part and reversed it in part. *See Travelers Indemnity Co. v. Page & Associates Construction Co.,* 1998 Tex.App. LEXIS 6423, No. 07-97-0338-CV (Tex.App.--Amarillo Oct. 15, 1998), *on rehearing,* 1998 Tex. App. LEXIS 7531 (Tex.App.--Amarillo Dec. 3, 1998), *on further rehearing,* 1999 Tex. App. LEXIS 86 (Tex.App.--Amarillo Jan. 8, 1999, pet. denied) (not published).

Because the two aspects of the suit are so closely interrelated, in order to intelligently discuss this particular appeal, we will again recite the facts we iterated in our opinion dealing with the coverage appeal. This is especially necessary inasmuch as the parties to the extra-contractual portion of the lawsuit stipulated that the pleadings,

evidence, briefs, letters, and stipulations in connection with the coverage case might be referenced and used in the extra-contractual case.

Travelers issued two successive comprehensive general liability policies to Page covering the period from January 1, 1985, through February 21, 1986. During that period, Page undertook the construction of a large building in Albuquerque, New Mexico, called The Montebello. Page was the general contractor on the project and hired the Associated Masonry Construction Company (AMCON) as a subcontractor responsible for performing the masonry work on the building, including the structural walls. Virtually all of AMCON's work was completed within the Travelers policy period. Other subcontractors subsequently finished the walls by applying stucco to the exterior and drywall to the interior. The architect issued a certificate of substantial completion on December 23, 1986, and the building was accepted by the owners.

In late 1987, the owners noticed cracks in the stucco. In February and March 1988, the owners brought the cracks to Page's attention, who attributed them to the owners' decision to omit expansion joints in the stucco. By late 1988, the owners believed the cracks were due to structural deficiencies in the masonry work rather than defects in the stucco. An engineering firm was hired, who determined the cause of the cracks was certain deficiencies in the construction process.

In January 1989, the owners notified Page and its surety, Safeco Insurance Company (Safeco), of the defects and the owners' position that by failing to properly

investigate or repair the cause of the cracking, Page had breached its contract and, because of the breach, they intended to file suit. On February 17, 1989, Page notified the three insurance carriers of the owners' demands, but did not demand coverage or a defense under the policies.

The owners filed suit in New Mexico against Page and Safeco on June 12, 1989, alleging breach of contract. Although the policy issued by Travelers required Page to "immediately forward to [Travelers] every demand, notice, summons, or other process," Page failed to provide Travelers with the petition in the owner's suit or request a defense until May 10, 1990. Travelers' immediate response is not clear from the record. On October 12, 1990, Travelers agreed to assume the defense of Page, but reserved its right to deny coverage and withdraw from defense of the claim if it determined there was no "occurrence" during the policy period. Another pending action, between AMCON and Page, was joined with the action brought by the building owners. In 1991 and 1992, the owners made repairs to The Montebello.

The parties settled the owners' suit against Page and Safeco on March 11, 1992. Safeco paid $950,000 to the building owners, and in turn, Safeco sought $1,092,000 in reimbursement from Page and the Pages individually.[1] By letter dated June 17, 1992, addressed to Travelers and two other insurers, Page requested that the companies reimburse Page and the Pages individually for the full amount sought by Safeco, as well

---

[1]The Pages signed the indemnity agreement with Safeco in their individual capacities.

as $158,713.68 in defense costs. There was no indication what, if any, portion of the defense costs had been paid by the other insurers.

Travelers maintained there was no coverage under the policies it issued because there was no property damage during the policy periods. It also declined to pay additional defense costs on the ground that those costs were incurred either before May 10, 1990, or were incurred in defending the AMCON suit. In response, and on July 6, 1992, Page and the Pages individually filed suit in Potter County against Travelers and the two other insurers, Maryland Casualty Company and Employers Casualty Company. In that action, Page and the Pages sought a declaration that Travelers' policy provided coverage and asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, negligence, violations of the Texas Insurance Code and the DTPA.

Each of the insurance companies timely filed an answer. Employers Casualty was subsequently put in receivership and had minimal involvement in this litigation. On October 27, 1992, Maryland Casualty settled with Page and the Pages for $250,000. The settlement agreement provided that $150,000 would be paid to Page and Safeco to settle coverage claims and $100,000 to Safeco and the Pages individually for extra-contractual claims. In 1994, Page and AMCON entered into a settlement whereby AMCON paid Page $157,406 in exchange for dismissal of the claims against it. This agreement provided that $138,366 was for investigation of the defects at The Montebello and $19,040 was to repair interior drywall. In November of 1995, Page and the Pages moved for summary judgment

5

on the issue of coverage and breach of contract. Travelers responded and filed an amended answer asserting late notification, lack of coverage, exclusions, and limitations as affirmative defenses. Travelers also filed its own motion seeking summary judgment on the issues of coverage and duty to defend.

The trial court denied Travelers' motion and granted Page and the Pages' motion for partial summary judgment, holding that Travelers had a duty to defend Page and the policies provided coverage for the owners' property damage, but did not cover the cost of repairing the faulty construction. The trial court found there were questions of fact on the issue of damages and reserved that issue for trial. On an agreed motion, the trial court severed the extra-contractual claims. Before the trial, the parties presented a document entitled "Proposed Agreed Pretrial Order" signed by all parties that contained extensive fact stipulations. Although the trial court never signed the stipulation, under Rule 11 of the Rules of Civil Procedure, it is sufficient as an agreement under that rule.

After the trial on damages, the trial court rendered judgment on the claims for declaratory relief and breach of contract awarding $907,131.77 in actual damages, $253,499.83 in pre-judgment interest, $170,000 in attorney fees, with an additional amount of $30,000 on appeal to this court and $5,000 in making, or responding to, a writ of error[2] to the supreme court. Upon the appeal of that judgment, we reversed the judgment for property damage and rendered judgment for $50,000 (after credit) in loss of use damages

---

[2]With the adoption of the 1997 changes to the Rules of Appellate Procedure, the writ of error has been replaced by the petition for review. Tex. R. App. P. 53.1.

6

and $62,246.66 in defense costs, as well as attorney fees and interest. We remanded for a determination by the trial court of pre- and post-judgment interest.

Trial subsequently proceeded on the allegations of DTPA/Insurance Code extra-contractual liability based on Travelers' alleged misrepresentation of coverage and unfair claims handling practices. After a bench trial, the trial court found Travelers had engaged in conduct that violated the Texas DTPA and the Texas Insurance Code and entered the judgment giving rise to this appeal.

In challenging the trial court judgment, Travelers presents six issues.[3] We will discuss those issues sequentially as the discussion becomes necessary to the disposition of this appeal. In the first issue, Travelers inquires if there was legally and factually sufficient evidence that it violated article 21.21 of the Texas Insurance Code (the Code) or the DTPA. In particular, Travelers inquires:

> A. As a matter of law, did it have a reasonable basis to deny coverage because of a bona fide coverage dispute?
>
> B. Did any of Travelers' statements regarding the interpretation of its insurance policies constitute actionable misrepresentation?
>
> > 1. Can Travelers' statements regarding the interpretation of its insurance policies constitute actionable misrepresentation?
> >
> > 2. Can statements in internal Travelers memoranda, never communicated to the plaintiffs, constitute actionable misrepresentation?

---

[3]Travelers' first issue contains four subparts, its third issue contains two subparts, and its fourth issue also contains two subparts.

3. Were Travelers' alleged misrepresentations the producing cause of any injury to the plaintiffs?

Appellees respond to Travelers' first issue contentions by asserting that the bona fide dispute defense is not available to Travelers, statements and communications made by Travelers to them amounted to more than a "purported 'interpretation' of its policies," selected memoranda in Travelers' files established an intent to mislead appellees as to the coverages under Travelers' policies, and the misrepresentations were a producing cause of damages to them as a matter of law. In their brief, appellees point out that the "trial court's findings and conclusions as to TRAVELERS' unfair or deceptive acts or practices, are grounded in TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) and (12), and 14B V.A.T.S. INS. CODE, art. 21.21 § 4(1) and (2), all of which are actionable pursuant to V.A.T.S. INS. CODE, art. 21.21, § 16 (Vernon 1981 and Supp. 1996)." The relevant conclusions of law relied upon by appellees as pointed out by them are:

2.05. The Travelers Indemnity Company engaged in unfair or deceptive acts or practices as defined by 14B V.A.T.S. Ins. Code, Art. 21.21, §4(a) (Vernon 1981 and Supp. 1996), which resulted in damage to Page & Wirtz. Specifically, Travelers:

(a) Represented that its insurance contracts involved obligations which they did not have or involve;

(b) Represented its insurance services had characteristics or benefits which they did not have;

(c) Made statements misrepresenting the terms, benefits, or advantages of their insurance policies;

8

(d)  Made assertions, representations, or statements with respect to their insurance that were untrue, deceptive, or misleading;

(e)  Made misrepresentations relating to their insurance policies, by:

(1) making untrue statements of material fact;

(2) failing to state material facts that were necessary to make other statements not misleading, considering the circumstances under which they were made;

(3) making statements in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

*    *    *

2.07    The Travelers Indemnity Company engaged in unfair claims settlement practices that caused damages to Page & Wirtz.  Specifically, Travelers:

(a) Misrepresented to Page & Wirtz pertinent facts or policy provisions relating to the coverage at issue in violation of Article 21.21-2, §2(b)(1) and 28 Tex. Admin. Code §21.203(1), actionable pursuant to 14B V.A.T.S. Ins. Code, Art.21.21, §16 (Vernon 1981)[Pre-1995 Amendments]; and 14B V.A.T.S. Ins. Code, Art. 21.21, §4(10)(i)(Vernon Supp. 1996), actionable pursuant to Art. 21.21, § 16 [Post-1995 Amendments].

(b) Did not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims submitted to which liability has become reasonably clear in violation of 28 Tex. Admin. Code §21.203(4), actionable pursuant to 14B V.A.T.S. Ins. Code, Art.21.21, §4(10)(iii)(Vernon Supp. 1996), actionable pursuant to Art. 21.21, §16 [Post-1995 Amendments].

(c) Failed within a reasonable time to affirm or deny coverage of a claim in violation of 28 Tex. Admin. Code §21.203(1), actionable pursuant to14B V.A.T.S. Ins. Code, Art. 21.21, §(16)(Vernon 1981)[Pre-1995 Amendments]; and 14B V.A.T.S. Ins. Code, Art. 21.21, §4(10)(V)(A) (Vernon Supp. 1996), actionable pursuant to Art. 21.21 §16 [Post-1005 Amendment].

(d) Refused to pay a claim without conducting a reasonable investigation of the claim based upon all available information in violation of 28 Tex. Admin. Code § 21.203(15), actionable pursuant to 14B V.A.T.S. Ins. Code, Art. 21.21 §16 (Vernon 1981) [Pre-1995 Amendments]; and 14B V.A.T.S. Ins.

Code, Art. 21.21 §4(10)(viii)(Vernon Supp.1996), actionable pursuant to Art. 21.21, §16 [Post 1995 Amendment].

\* \* \*

2.10 The Travelers Indemnity Company engaged in unfair or deceptive acts or practices as defined by 14B V.A.T.S. Ins. Code, Art. 21.21, §4(a)(Vernon 1981 and Supp. 1996), which resulted in damages to J.C. Page and Alice L. Page, individually. Specifically, Travelers:

(a) Represented that its insurance contracts involved obligations which they did not have or involve;

(b) Made statements misrepresenting the terms, benefits, or advantages of their insurance policies;

(c) Made assertions, representations, or statements with respect to their insurance that was untrue, deceptive, or misleading;

(d) Made misrepresentations relating to their insurance policies, by:

(1) making untrue statements of material fact;

(2) failing to state material facts that were necessary to make other statements not misleading, considering the circumstances under which the statements were made;

(3) making statements in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

As we have noted, appellees' actions were grounded on Travelers' alleged commission of various acts prohibited by article 21.21 of the Code and section 17.46(a) of the Texas Business and Commerce Code. The gist of those allegations is that Travelers asserted there was no coverage under its policies when it knew there was coverage for the loss of use of the premises, even if the loss of use occurred well after the policy period and, by continuing to deny that coverage, delayed the payment of defense

10

costs, refused to pay the defense costs that it represented it would pay, and otherwise refused to assist its insured in the defense of the underlying litigation. Appellees argue that this course of conduct by Travelers amounted to actionable misrepresentations on its part.

Appellees also argue that apart from the alleged misrepresentations, Travelers erred in having Ed Wille, its claims handler, handle the dual responsibilities of investigating coverage for the purposes of evaluating and handling the claim from a defense perspective. By doing so, appellees claim, "all the while that TRAVELERS was purportedly 'defending' its insured (as it had represented it was going to do), the same claims handler embarked upon a fact gathering mission to obtain only evidence of facts that would allow him to deny coverage altogether." By doing so, they continue, Travelers attempted to place upon their defense attorney "the burden of providing only the selected evidence that TRAVELERS could rely on in denying coverage."

Travelers contends that because there was a bona fide dispute about the coverage of its policy, it could not be liable for punitive damages. Appellees respond that the bona fide dispute defense would only be applicable to an article 21.21 § 4(10)(a)(ii) action and not to their other allegations. As relevant here, that statute characterizes as an unfair settlement practice, "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear." Tex. Ins. Code Ann. art. 21.21 § 4(10)(a)(ii) (Vernon Supp. 2002).

11

Appellees reason that the alleged failure of Travelers to pay legal defense costs it had said it would pay and its attempt to impermissibly apportion them "between the AMCON claims and the Forum claims, thereby representing that because there was no coverage for the AMCON claim standing alone, TRAVELERS had no duty to pay defense costs attributable to same" resulted in wrongful delay and a refusal to pay defense costs due under its policy. Appellees also argue that Travelers misrepresented its defense obligations to its insured by assuring Page's attorney it would undertake Page's defense and "then wrongfully refusing to do so" and it "misrepresented its indemnity obligation under the policies." Appellees then reason that to be actionable as a misrepresentation under the Insurance Code or the DTPA, the statement need not rise to the level of actionable fraud and "[a]ll that is required by Article 21.21, section 16, is that the practice complained of be defined within section 17.46 of the DTPA or within Article 21.21, section 4." The gist of appellees' argument is that Travelers did not "misinterpret" its policy language, but instead misrepresented its defense, as well as its indemnity obligation to its insured.

The answer as to whether the bona fide dispute defense applies to more than article 21.21 § 4(10)(a)(ii) actions requires a careful scrutiny of the seminal case of *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997). In that case, the court initially had to consider whether there was some evidence to support a jury finding of bad faith on the part of Universe. As relevant here, the court then went on to determine Universe's complaint that there was no evidence to support a recovery of punitive damages below. The high

court began its discussion by referring to its decision in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994), and noted its explication that punitive damages can be awarded for bad faith "only when an insurer was actually aware that its actions involved an extreme risk--that is, a high probability of serious harm, such as death, grievous physical injury, or financial ruin--to its insured and was nevertheless consciously indifferent to its insured's rights, safety, or welfare." *Giles*, 950 S.W.2d at 57. The *Giles* court further noted that *Moriel* "clarif[ied] the standards governing the imposition of damages in the context of bad faith insurance litigation." *Id.* The court then went on to hold that although the evidence was legally sufficient to support the jury's finding that Universe had breached its duty of good faith and fair dealing, it was not sufficient to justify an award of punitive damages. *Id.* *Giles* teaches, then, that in order to recover punitive damages, the conduct of the insurance company must rise to the extreme risk and conscious indifference level articulated in *Moriel.*

We do not read the teaching of *Giles* as being limited to the specific sections in question there. Rather, when, as here, the alleged statutory violations are the functional equivalent of alleged bad faith, the bad faith principles enunciated in *Giles* are applicable. In *Escajeda v. Cigna Ins. Co. of Texas*, 934 S.W.2d 402 (Tex.App.--Amarillo 1996, no writ), we noted that a mere disagreement concerning the interpretation of a contract is not a sufficient basis to sue under either article 21.21 of the Code or section17.46(a) of the Business and Commerce Code. *Id.* at 407. We also noted that no misrepresentations exist for the purposes of the DTPA where the only supposed misrepresentations are the

13

terms of the contract itself. *Id.* at 408. Without more, claims that an insurer such as Travelers failed to affirm or deny coverage within a reasonable time or failed to conduct a reasonable investigation have their genesis in the duty of good faith and fair dealing and, in order to recover punitive damages, the insurer's conduct must rise to the level explicated in *Moriel* and explained in *Giles.* Thus, if Travelers' denial of coverage arose from a bona fide dispute as to the insurance coverage, and not as a result of deliberate misrepresentations or conscious indifference, it would not be subject to punitive damages.

In their brief, appellees posit that "[a]lthough the mere denial of indemnity benefits does not amount to a misrepresentation, the *reasons* given by TRAVELERS for its denial of indemnity benefits did amount to misrepresentations of TRAVELERS' coverage." They go on to argue that knowing that their policies covered loss of use damages, albeit under a reservation of rights, Travelers affirmatively represented it would undertake Page's defense, and that by first delaying payment of Page's defense costs and then failing to participate in the defense and by refusing to pay defense costs, although it knew coverage existed under its policies, Travelers engaged in the type of unfair or deceptive acts or practices defined in article 21.21 § 4(a) of the Code. They also argue that because Travelers knew that loss of use was covered in their policies, its representations to Page that the loss of use was not covered unless physical harm had "manifested" itself during the policy period amounted to an unfair and deceptive act or practice. It is apparent that appellees' arguments are bottomed on the premise that the record shows Travelers knew

it had loss of use coverage under its policies even if actual physical injury to the premises did not manifest itself during the recited policy period.

In support of their proposition that Travelers knew it had loss of use coverage but misrepresented coverage under the policy, appellees point to a series of letters Ed Wille, a Travelers adjuster who was handling The Montebello claim, wrote to appellees' counsel Frank Salazar, during the period from October 12, 1990, to and including June 29, 1992. In the letters written prior to the June 29, 1992 letter, Wille repeatedly asked about the necessity for determining the time the property damage occurred/manifested and, in the process, asked to be furnished copies of two letters that might help determine that question. Wille was supplied the two letters, and in his June 29, 1992 letter to Salazar, commented that the two letters "would seem to prove that the property damage did not occur until well after our policy ended." However, in an internal memorandum dated April 22, 1992, which, of course, was after receiving the copies of the two letters, but prior to his June 29, 1992 reference to them, Wille noted, "[s]poke to Tom Mills . . . [he] does not feel we need to respond to submission of the 2 letters we asked for. The letters really do not help determine when damage 1st manifested itself." Appellees contend that this is evidence of an actionable course of misrepresentation when Travelers knew it had loss of use coverage regardless of the date of the occurrence.

As additional evidence that Travelers knew it had loss of use coverage, appellees contend that Wille admitted in deposition testimony that he knew it did not matter whether

the loss of use occurred within or outside the policy period. The response referred to occurred in the course of the following colloquy with appellees' counsel and was in the course of a discussion about policy provisions:

\* \* \*

Q: Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof. Including the loss of use of the property. Is that what this is talking about?

A: I would assume it was loss of use of the property.

Q: That occurs at any time?

A: Yes.

Q: The loss of use doesn't have to take place during--the loss of use of the property does not have to take place during the policy period, does it.

A: No. As long as there's physical injury during the policy period.

\* \* \*

Q: --loss of use could have occurred much later and would have been covered.

A: Yes.

   Loss of use later; not property damage.

Q: I understand. Loss of use of the property.

A: Right.

Q: Loss of use which occurred after your policy period?

A: Yes.

\* \* \*

16

The exchange shows that Wille's reference to loss of use coverage after the policy period was conditioned upon the occurrence of property damage during the policy period. It is not sufficient to show he knew it did not matter whether the loss of use occurred within or outside the policy period. The record shows that until this court's decision in the coverage suit, Travelers' contention was that it had no coverage at all because the property damage took place outside of the policy period. That being so, Wille's testimony was not inconsistent with Travelers' position. There is nothing in this record to show that Travelers actually knew that loss of use occurring outside of the policy period was covered until this court's opinion in the coverage suit.

Appellees also argue that Travelers' failure to defend the AMCON suit, even though Wille felt it should do so and was of a nature sufficient to justify the trial court's conclusion that it engaged in unfair or deceptive acts or practices as defined in article 21.21, § 4(a) of the Code. On August 23, 1990, Wille prepared an internal memorandum to his superior in which he opined that the company owed a defense to Page in the Forum suit and they should defend the AMCON suit as well, even though he felt no coverage existed for that suit. However, after discussing the matter with his superior, on October 12, 1990, he wrote Frank Salazar, appellees' attorney, that Travelers could find no coverage for the AMCON suit (the Forum and AMCON suits were eventually consolidated) and would not defend or indemnify Page in that regard. As we understand appellees' argument, the adjuster's belief "triggered a duty on the part of TRAVELERS to defend the consolidated AMCON/Forum claims" and its failure to do so was sufficient to give rise to punitive

17

liability. We disagree. While the evidence might be sufficient to show a difference of opinion on the part of Travelers' employees, it was not communicated to appellees and was not sufficient to constitute a misrepresentation sufficient to rise to punitive damages.

As evidence of conduct giving rise to punitive damages, appellees also refer to another Travelers' internal memo, which noted that "[o]ur Albuquerque Office has denied indemnity & defense," which it had not done. However, this internal memo was also not communicated to appellees and could not constitute an actionable misrepresentation. Appellees further rely on two other internal memos in Wille's file. In a March 12, 1991 memo, he referred to having spoke to Mr. Mills (apparently his superior) and stated, "our position will be that we only owe defense after tender of Forum Lawsuit (May of '90) -- this would apply to both legal and expert fees -- We would have to pay for the [AMCON] defense after May of '90 as the lawsuits were consolidated and we cannot deny defense of one part of the lawsuit." However, in another memo dated October 9, 1991, Wille noted "Frank Salazar called . . . I explained that almost all of the legal bill was for the AMCON settlement and that we would not pay those charges as we previously informed him we did not have coverage for that matter." It is undisputed that neither of these memos were ever shown to appellees and the memos themselves demonstrate at most an internal disagreement and are not sufficient to show actionable misrepresentations. The oral statement to Salazar is consistent with Travelers' positions about its contractual coverage and is not sufficient to show an actionable misrepresentation.

The next question that warrants discussion is whether the alleged misrepresentations, if actionable, would have been the producing cause of damages as a matter of law in at least the amount of the policy benefits incorrectly withheld. In support of their contention that this is true, appellees rely on *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129 (Tex. 1988), and *Seneca Resources Corp. v. Marsh & McLennan, Inc.,* 911 S.W.2d 144 (Tex.App.--Houston [1st Dist.] 1995, no writ). It is true that in *Vail,* the court used language to that effect; however, we agree with the *Seneca* court's interpretation of that language as additionally explicated in *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 666 (Tex. 1995). The *Seneca* court explained that in using that language, the *Vail* court was describing a measure of damages, but it did not remove the necessity of proving causation. *Id.* at 149.

In actions such as this involving alleged violations of the DTPA or the Code, the party seeking recovery of damages bears the burden of establishing that the actions complained of were a "producing cause" of the injuries suffered. *Doe v. Boys Club of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code, § 17.50(a)(1) (Vernon Supp. 2002). In doing so, the plaintiff must show an unbroken causal connection between the alleged misrepresentation and injuries suffered by the complaining party. *Boys Club,* 907 S.W.2d at 481.

Appellees argue that it is undisputed that Travelers' conduct resulted in repeated and continuous delays in the reimbursement of defense costs and its refusal to pay

19

covered defense and indemnity for loss of use damages. For the reasons we have expressed, the record establishes that these matters arise from a bona fide dispute about policy coverage which was not resolved until this court's opinion in the coverage case. Appellees argue that they suffered an economic loss because they incurred some $243,000 in attorney fees, which they reimbursed under an indemnity agreement with Safeco. There is nothing in the record other than speculation to show that Safeco would not have retained independent counsel and retained engineering experts if Travelers had not questioned its coverage, and the Pages' reimbursement liability for such expenses arose out of the indemnity agreements they entered into with Safeco. With regard to the Pages' mental anguish, there is nothing in the record demonstrating that Travelers ever communicated directly with the Pages. Again, inasmuch as there was a bona fide dispute about coverage, Travelers did not act unreasonably or unconscionably in denying payment until the dispute was finally resolved by a court.

Appellees also assert that the evidence is both legally and factually sufficient to sustain the trial court's finding that Travelers was guilty of an unfair claim settlement practice by failing to conduct a reasonable investigation of the claims against it based upon all available information. In particular, appellees say the trial evidence established that Travelers unreasonably disregarded evidence supporting its coverage of recoverable elements of damage, *i.e.*, defense costs and loss of use, "so it could litigate the coverage trigger (manifestation) for property damage resulting from physical harm." They also assert that Travelers conducted a results-oriented investigation on the manifestation of

20

damages without regard to the delay it caused in connection with the payment of defense costs and loss of use damages.

In support of this argument, appellees primarily rely upon the court's explication in *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597 (Tex. 1993). In that case, the court again explicated that "if the insurer has denied what is later determined to be a valid claim under the contract of insurance, the insurer must respond in actual damages up to the policy limits. But as long as the insurer has a reasonable basis to deny or delay payment of the claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith." *Id*. at 600. Thus, the court instructed, "the issue of bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Id.* at 601.

In *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex. 1997), and in discussing a jury finding that State Farm should have conducted a more thorough investigation and told its insured about a policy provision for additional living expenses, the court explicated that to be guilty of unconscionable conduct within the purview of the DTPA, it must be guilty of "grossly" unfair conduct. In that regard, it defined the term "gross" as meaning "glaringly noticeable, flagrant, complete and unmitigated." *Id.* at 451. It is in the light of these explanations that we consider the question whether Travelers failed to conduct a proper investigation.

21

In support of their proposition that Travelers was delinquent in conducting its investigation, appellees assert that the company unreasonably disregarded evidence supporting coverage of elements of damage such as defense costs and loss of use, so it could litigate "the coverage trigger (manifestation) for property damage resulting from 'physical harm'" and that it conducted a results-oriented investigation concentrating on ways to escape coverage rather than impartially trying to determine what coverage might exist. In advancing that argument, appellees primarily rely upon the testimony of their expert witness, John Frazier. He reached his conclusion that Travelers was guilty of unconscionable conduct because it failed to file a declaratory judgment action on the question of coverage, it made repeated requests to Page's attorneys that could be used in making coverage determinations, and it failed to have two adjusters investigating the claim, one to investigate coverage and a separate adjuster to investigate underlying claims against the insured. In regard to the failure to file a declaratory judgment action, we were cited no authority holding that the failure to file a declaratory judgment action to determine coverage by an insurer is sufficiently reprehensible to give rise to an action to recover punitive damages.

With regard to requesting information from Page, the record reveals that information was voluntarily given to Travelers. The fact that information was requested from the insured's representative does not mean that Travelers did not conduct a reasonable investigation, nor does it support a conclusion that in doing so, it was guilty of unconscionable conduct. *See Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co.,* 879

22

S.W.2d 920, 941 (Tex.App.--Houston [14th Dist.] 1994, no writ). For the reasons we have stated, the record shows a dispute about coverage primarily based upon the fact that if the damages did not manifest themselves during the policy, Travelers contended it had no coverage. That dispute was not settled until this court made its ruling. In view of this context, the failure to have two adjusters assigned did not amount to the type of grossly unfair conduct giving rise to exemplary damages. With regard to the assertion that Travelers set up its investigation knowing that it at least had loss of use coverage, we have discussed that question above and determined the record is not sufficient to support that conclusion.

In discussing the trial court's award of mental anguish damages, it is worthy of note that the proof of the mental anguish shows that it was related to the Pages' concern over the pending lawsuits and their potential exposure to damages, as well as natural concern over pending litigation. However, for the reasons we have discussed above, Travelers' refusal to admit coverage and to pay the trial court judgment until the case was finally resolved at the appellate level does not rise to the intentional infliction of mental anguish upon the Pages, nor was its conduct so outrageous as to give rise to a right to recovery.

In summary, Travelers' first four issues are sustained. Because that holding will require a reversal of the trial court judgment, it is not necessary to discuss its fifth and sixth issues. The judgment of the trial court is reversed, and judgment here rendered that appellees take nothing by their suit.

23

John T. Boyd
Chief Justice

Do not publish.